UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

S.P. on behalf of M.P.,                                   20-CV-8380(ALC)(SN)

                 Plaintiff,

    v.

New York City Department of Education, New York
City Board of Education, and Meisha R. Porter, in
her official capacity as Chancellor of the New York
City School District,

                 Defendants.

_____

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

---

Rebecca C. Shore
Advocates for Children of New York, Inc.
151 West 30th Street, 5th Floor
New York, New York 10001
(212) 822-9574
rshore@advocatesforchildren.org

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 3

    A.    The DOE Impartial Hearing........................................................................ 4

    B.    The Fees Complaint ..................................................................................... 9

    C.    S.P.'s Counsel ............................................................................................ 10

III.   PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AS THE PREVAILING
     PARTY ................................................................................................................. 13

IV.   THE REQUESTED FEE IS REASONABLE .................................................... 14

    A.    Plaintiff's Attorneys' Hourly Rates Are Reasonable............................. 14

    B.    The Hours Plaintiff's Attorneys Spent Are Reasonable ...................... 20

V.    THE REQUESTED COSTS AND EXPENSES ARE REASONABLE ......................... 24

VI.   CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. New York City Dep't of Educ.*,
  2019 WL 1292432 (S.D.N.Y. Mar. 21, 2019) .......................................................................23

*A.R. v. N.Y.C. Dep't. of Educ.*,
  407 F.3d 65 (2nd Cir. 2005)................................................................................................14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008)..............................................................................1, 13, 14, 15

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)...........................................................................................................24

*B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*,
  716 F.Supp.2d 336 (S.D.N.Y. 2010)..................................................................................13

*C.D. v. Minisink Valley Cent. Sch. Dist.*,
  No. 17 Civ. 7632, 2018 U.S. Dist. LEXIS 134646 (S.D.N.Y. Aug. 9, 2018) .............14, 16, 19

*D.B. v. N.Y.C. Dep't of Educ.*,
  2019 WL 6831506 (S.D.N.Y. Apr. 22, 2019).............................................................17, 18, 19

*D.B. v. New York City Dep't of Education*,
  2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019)....................................................................19

*D.S. v. New York City Dep't of Educ.*,
  700 F. Supp. 2d 510 (S.D.N.Y. 2010)................................................................................19

*E.B. v. New York City Dep't of Educ.*,
  255 F.R.D. 59 (E.D.N.Y. 2008) .........................................................................................19

*E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*,
  No. 11 Civ. 5243, 2012 WL 5462602 (S.D.N.Y. Nov. 8, 2012) ........................................16

*E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*,
  No. 11 Civ. 5243, 2014 WL 1092847 (S.D.N.Y. Mar. 17, 2014) ...................................16, 17

*Farrar v. Hobby*,
  506 U.S. 103 (1992)............................................................................................................13

*G.B. ex rel. N.B. v. Tuxedo*,
  894 F.Supp.2d 415 (S.D.N.Y. 2012)..............................................................................19, 24

*Green v. City of New York,*
No. 05–CV–429, 2010 WL 148128 (E.D.N.Y. Jan. 14, 2010), aff'd, 403 Fed.
Appx. 626 (2d. Cir. 2010) ............................................................................... 14, 15

*I.C. v. New York City Dep't of Educ.,*
20-cv-05264 (ALC) (S.D.N.Y.) ............................................................................. 19

*J.L. v. New York City Dep't of Educ.,*
17-cv-7150 (S.D.N.Y.) .......................................................................................... 19

*Johnson v. Ga Highway Express,*
488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v.*
*Bergeron,* 489 U.S. 87 (1989) ........................................................................... 15, 16

*L.V. v. New York City Dep't of Educ.,*
03-cv-9917 (S.D.N.Y.) .......................................................................................... 19

*Lochren v. Cnty. of Suffolk,*
344 Fed. Appx. 706 (2d Cir 2009) ........................................................................ 15

*M.C. v. Dep't of Educ. of NYC,*
No. 12 Civ. 9281(CM)(AJP), 2013 WL 2403485 (S.D.N.Y. 2013) ........................ 1

*M.D. v. N.Y.C. Dep't of Educ.,*
No. 17-CV-2417, 2018 U.S. Dist. LEXIS 156923 (S.D.N.Y. Sept. 14, 2018) ......... 15, 24

*M.R. v. N.Y.C. Dep't of Educ.,*
20-cv-00744 (S.D.N.Y.) ......................................................................................... 19

*Moon v. Gab Kwon,*
No. 99 Civ. 11810(GEL), 2002 WL 31512816 (S.D.N.Y. 2002) ............................ 1

*P.R. v. N.Y.C. Dep't of Educ.,*
No. 17-CV-4887(LTS)(KNF), 2018 WL 4328012 (S.D.N.Y. July 19, 2018) ......... 18

*Quaratino v. Tiffany & Co.,*
166 F.3d 422 (2d Cir. 1999) .................................................................................. 20

*S.B. v. N.Y.C. Dep't of Educ.,*
117 F. Supp.3d 355 (S.D.N.Y. 2015) .................................................................... 19

*S.K. ex rel. E.N. v. N.Y.C. Dep't of Educ., et al.,*
17-cv-09906 (ER) (S.D.N.Y.) ................................................................................ 19

*T.K. v. N.Y.C. Dep't of Educ.,*
No. 11 Civ. 3964, 2012 U.S. Dist. LEXIS 47311 (S.D.N.Y. Mar. 30, 2012) ......... 16

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ..................................................................................... 13

*V.L. v. N.Y.C. Dep't of Educ.*,
    19-cv-08599 (S.D.N.Y.) ............................................................................... 19

*Z.V. v. N.Y.C. Dep't of Educ.*,
    222 F.Supp.3d 326 (S.D.N.Y. 2016) ........................................................... 19

## Statutes and Rules

20 U.S.C.
    § 1401(3)(A) .................................................................................................. 3
    § 1415(i)(3) .................................................................................................... 1
    § 1415(i)(3)(B) ................................................................................. 1, 2, 13, 23
    § 1415(i)(3)(D)(iii) ...................................................................................... 21
    § 1415(f)(1) .................................................................................................... 4

28 U.S.C. § 1920 ................................................................................................. 23

29 U.S.C.
    § 705(20) ........................................................................................................ 1
    § 794 .............................................................................................................. 1
    § 794a(b) ...................................................................................................... 13

Fed. R. Civ. Proc. 54(d)(2) ................................................................................ 23

## I.      INTRODUCTION

This motion seeks reasonable fees for a prevailing party under the fee-shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). Plaintiff S.P. prevailed in all aspects of the administrative proceedings below, receiving all of the relief she requested in her impartial hearing request. *See* Declaration of Ashley Grant dated March 25, 2021 ("Grant Decl."), Ex. A (Findings of Fact and Decision by IHO Richard D. Marsico, Esq.) at 18. The fees requested by her lawyers at Advocates for Children of New York ("AFC") for the time expended by AFC attorneys and pro bono co-counsel Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") reflect reasonable rates and reasonable hours under the circumstances of this matter.[1]

Plaintiff S.P. is the mother of M.P., a child with a disability as defined under the IDEA and Section 504. *See* 20 U.S.C. § 1415(i)(3)(B); 29 U.S.C. § 705(20). This action arose because M.P. was denied a Free Appropriate Public Education ("FAPE") for the 2012-2013 through 2016-2017 school years by the New York City Department of Education ("DOE"). *See* Grant Decl. Ex. B (Impartial Hearing Request) at 1-2. To obtain an appropriate education for her child, Plaintiff had no choice but to file a request for an impartial hearing with the DOE. *See id*. at 2-8. The request sought the following relief: (1) payment for 720 hours of tutoring, (2) a TASC (high school equivalency exam) preparatory program with appropriate special education services, (3) a

---

[1] Pro bono law firm Arnold & Porter intends to donate any attorneys' fees recovered in this matter to Advocates for Children. *See* Declaration of Rebecca Shore ("Shore Decl.") ¶ 7. As courts in the Second Circuit and the Southern District of New York have held, "The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization." *Arbor Hill*, note 2. Thus, "nonprofit civil rights attorneys are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients, despite defendants' claim that nonprofit attorneys have lower overhead costs and no built-in profit margins." *Moon v. Gab Kwon*, No. 99 Civ. 11810(GEL), 2002 WL 31512816 (SDNY 2002); *M.C. v. Dep't of Educ. of NYC*, No. 12 Civ. 9281(CM)(AJP), 2013 WL 2403485 (SDNY 2013).

vocational program that could provide M.P. with the skills necessary to obtain a nursing certificate, (4) roundtrip transportation to all ordered services, (5) occupational therapy services two times per week, and (6) transition services. *Id.* at 8-9.

S.P.'s hearing before an impartial hearing officer ("IHO") took place over two days in the summer of 2017. Grant Decl. Ex. A. Due to the DOE's strategy, S.P.'s attorneys had to litigate strenuously at the hearing, defending against a motion to dismiss and request to present witnesses out of order, presenting the testimony of five witnesses, and filing a written closing brief. By decision dated October 10, 2017, the IHO ordered all of Plaintiff S.P.'s requested relief. *Id.* Plaintiff is without question the prevailing party under the IDEA. *See* 20 U.S.C. § 1415(i)(3)(B). The DOE has yet to pay Plaintiff's reasonable attorneys' fees as required under the IDEA and Rehabilitation Act's fee-shifting provisions. Shore Decl. ¶ 9.

Therefore, Plaintiff respectfully moves for an award of reasonable attorneys' fees in the current amount of $98,111 and costs and expenses in the amount of $1,060.32, for a current total of $99,171.32, as well as the fees incurred in connection with this litigation after March 24, 2021. The fee amount accounts for the reasonable hours spent on this proceeding through March 24, 2021, and the rates are commensurate with Plaintiff's attorneys' experience and qualifications. The chart below shows the respective fees and expenses sought relating to the work performed by Arnold & Porter on the administrative matter before the IHO, and by AFC on the hearing before the IHO and the fees litigation in this Court through March 24, 2021:[2]

---

[2] When Plaintiff files her reply brief on this motion, Plaintiff will include updated invoices that will account for all fees and expenses for the period from March 25, 2021 through the filing of the reply brief.

|  | Total Fees Incurred | Fees Sought | Expenses | Total Amount Sought |
|---|---|---|---|---|
| Arnold & Porter Kaye Scholer LLP Fees | $102,310 | $87,480 | $1,060.32 | $88,540.32 |
| Advocates for Children for work in the administrative proceeding | $8,832 | $7,533 | $0 | $7,533 |
| Advocates for Children for work in this fees litigation, through March 24, 2021 | $4,023 | $3,098 | $0 | $3,098 |
| **Total Fees and Expenses through March 24, 2021** | $115,165 | $98,111 | $1,060.32 | $99,171.32 |

## II.    FACTUAL BACKGROUND

At the time that M.P.'s mother, S.P., filed the hearing request on May 11, 2017, M.P. was a twenty-one year old student with a learning disability as defined by the IDEA, 20 U.S.C. § 1401(3)(A). *See* Grant Decl. Ex. A at 2. The DOE classified M.P. as a student with a learning disability as early as 2012 but did not provide M.P. with any reading remediation. *Id.* at 4. During the 2012-2013 and 2013-2014 school years, M.P. attended Francis Lewis High School ("FLHS") and was not provided with any reading remediation to address his disability. *Id.* at 4-5. Over the course of the 2013-2014 school year, S.P., dissatisfied with M.P.'s school program and placement, looked for other placements for M.P. *Id.* at 5. S.P. asked the DOE for assistance in finding an appropriate program but the DOE did not assist. *Id.* at 5. S.P. was unable to find another placement for M.P. and instead withdrew him from special education services in September of 2014. *Id.* During the 2014-2015 school year, M.P. was placed in a windowless room at FLHS, referred to as the "room," "a general education classroom that had one teacher at

3

a time, students at different levels, and only African-American male students." *Id*. at 6. M.P. was transferred out of the "room" only after S.P. complained to the superintendent. *Id*.

In August 2015, M.P. had surgery to remove a brain tumor. *Id*. at 6. After the surgery to remove the tumor, S.P. asked FLHS to reevaluate M.P. for special education services but the school refused, forcing S.P. to ask the district office to evaluate M.P. *Id*. at 6-7. Even after the district evaluated M.P., FLHS  never implemented M.P.'s resulting IEP. *Id*. at 7-10. After attending high school for 6 years, M.P. did not have enough credits to graduate.  *Id*. at 16.

### A.      The DOE Impartial Hearing

In September 2016, S.P. contacted Advocates for Children of New York ("AFC"), the leading organization in New York City providing special education advocacy services to children with disabilities and their families. *See* Grant Decl. ¶¶ 4, 6. Advocates for Children agreed to represent SP in connection with M.P.'s educational needs and shortly thereafter, in November 2016, AFC asked Arnold & Porter to serve as pro bono co-counsel for S.P. *Id.* ¶ 6.[3] Between November 2016 and May 2017, AFC and Arnold & Porter attorneys researched M.P.'s educational needs, including reviewing M.P.'s school records, educational evaluations, and medical documentation, and investigated the types of relief that would be appropriate for M.P. Grant Decl. ¶ 9. Once that investigation was completed, S.P.'s attorneys drafted a request for an impartial hearing. *Id*. On May 11, 2017, S.P., through her attorneys, filed a request for an impartial hearing pursuant to the IDEA, 20 U.S.C. § 1415(f)(1), Section 504 of the Rehabilitation Act, and New York Education Law. *See* Grant Decl. Ex. B. The Hearing Request

---

[3] Arnold & Porter has nearly 1,000 attorneys in fourteen offices across the United States, Europe and Asia, and it has a long tradition of being a leading provider of pro bono services.  *See* Shore Decl. Ex A (Arnold & Porter Fact Sheet).

alleged that the DOE had denied M.P. a FAPE for at least the 2012-2013 through 2016-2017 school years and sought the following relief:

- Payment for 720 hours of reading and writing remediation at the Huntington Learning Center or an equivalent appropriate tutoring provider;

- A TASC preparatory program with appropriate special education services;[4]

- An appropriate vocational program that could provide M.P. with the skills necessary to obtain a nursing certificate or program;

- Roundtrip transportation in the form of MetroCards to all services described above;

- Occupational therapy services two times per week on an individual basis;

- Transition services; and

- All other relief deemed appropriate, including extending the period of eligibility under the IDEA and New York State law beyond the 2016-2017 school year.

*See id*. at 8-9.

On May 30, 2017, the parties attended a resolution session and–Plaintiff and her attorneys believed–made significant progress towards resolution of the dispute. *See* Grant Decl. ¶ 13. During a pre-hearing conference with the IHO on June 13, 2017, the DOE representative stated that: "this is a necessary complex case which, you know -- a very complex procedural history. And the parties are actively working together in the hopes that we will be able to resolve the complete -- and will not need a hearing date." *See* Grant Decl., Ex. D at 4 (Pre-Hearing Conference Transcript (6/13/17)). The parties continued to discuss settlement on several occasions between May 30, 2017 and early July 2017. Grant Decl. ¶¶ 15-16. During this time,

---

[4] The TASC test is the high school equivalency exam.  *See* Grant Dec. Ex C (TASC Test Assessing Secondary Completion *available at* https://tasctest.com/).

5

the DOE sent Plaintiff's attorneys possible school/training programs and tutors to explore as part of the settlement negotiations, which Plaintiff and her attorneys reviewed. *See* Grant Decl. Ex. E (Email exchange between Lucy McMillan and Gina Langkamp dated 6/12-6/28/17). At some point towards the end of June, without providing any explanation to S.P., the DOE stopped engaging in settlement discussions. Grant Decl. ¶ 16. S.P.'s attorneys followed up with the DOE several times to determine if the case could be settled without the need for a hearing, but the DOE did not respond with any substantive information. *Id*.

On July 11, 2017, S.P.'s attorneys attended a telephone pre-hearing conference before the Impartial Hearing Officer ("IHO"), during which the DOE made clear that it intended to proceed with the hearing. *Id*. ¶ 17. Nevertheless, in a final attempt to resolve the case without a hearing, on July 13, 2017, the Deputy Director of AFC, Matthew Lenaghan, contacted supervisors within the DOE's Office of Legal Services ("OLS"), to again attempt to settle the case. *Id*. OLS did not provide a substantive response to the request, requiring Plaintiff and her attorneys to prepare for the hearing scheduled for July 19, 2017, including preparation of the exhibits, witnesses, cross-examinations, and opening and closing statements. *Id*.

On July 14, 2017, after conferring with the DOE attorney, S.P.'s attorney requested that a second day be scheduled for the hearing. Grant Decl. Ex. F (Email exchange between Lucy McMillan, Stephanie Herzog and IHO Marsico dated 7/13-7/16/17). In response to S.P.'s attorney's email, the DOE attorney stated that she joined in the request because "[t]his is a highly complex case including many school years pled in the [Due Process Complaint]." *Id*. Also on July 14, 2017, the DOE indicated for the first time that it planned to file a motion to dismiss with respect to the allegations concerning the 2012-2013 through 2014-2015 school years. *Id*.

The DOE filed its motion to dismiss on July 17, requiring Plaintiff's attorneys to prepare arguments in response to the DOE's motion. *See* Grant Decl. ¶ 19. On July 17 and July 18, the DOE informed S.P.'s attorneys that, because the DOE's witnesses were on vacation, the DOE wanted to reserve the right to call witnesses on the second day of the hearing, after S.P. has presented her case, causing S.P.'s attorneys to research and prepare for arguments regarding the burden of production and the order of witnesses. *See* Grant Decl. Ex. G (Email exchange between Lucy McMillan, Stephanie Herzog and IHO Marsico dated 7/18/21). Also on July 18, on the eve of the hearing and after S.P.'s attorneys had fully prepared for the hearing, the DOE informed S.P.'s attorneys that it planned to concede that it did not provide M.P. with a free appropriate public education during the 2015-2016 and 2016-2017 school years.  Grant Decl. ¶ 20 & Ex. G.  The DOE continued to contest the relief requested and the claims for the 2012-2015 school years, requiring the hearing to proceed. Grant Decl. ¶ 20.

The IHO conducted a hearing over two days, on July 19, 2017 and August 10, 2017. *See* Grant Decl. Ex. A. The DOE entered 46 exhibits into evidence and the Parent entered 28 exhibits. *Id*. at 3, FN 2. Five witnesses testified on behalf of the Plaintiff. *Id*. at 3, FN 3. Prior to the hearing, the DOE informed S.P.'s attorney that the DOE would call two witnesses, causing S.P.'s attorney to prepare to cross-examine those witnesses; however, due to the vacation schedules of the DOE's witnesses, the DOE did not call them. Grant Decl. ¶ 22 & Ex. G. At the conclusion of the hearing, the DOE and Plaintiff's attorneys submitted written closing briefs, detailing the evidence, addressing the merits of the requested relief and responding to the DOE's motion to dismiss.  *See* Grant Decl. ¶ 24.

On October 10, 2017, the IHO issued a decision both on the motion to dismiss and on the merits. *See* Grant Decl. Ex. A. The IHO found that it was not necessary to decide the DOE's

motion to dismiss because the gross denials of FAPE warranted the full relief sought. *Id*. at 14-18. The IHO noted that, at the end of the proceedings, "[t]he parties do not dispute that M.P. is entitled to compensatory education. They disagree about whether there has been a gross violation of the IDEA and if so the form and amount of compensatory education M.P. should receive." *Id*. at 15. The IHO went on to find that "[t]he DOE willfully and with gross negligence violated M.P.'s right to a FAPE in AYs 2015 and 2016," *id*. at 15, and that "the DOE essentially did not provide any education to M.P. in AYs 2015 and 2016. There has been no improvement in M.P.'s reading level since eighth grade, he made virtually no academic process in AYs 2015 and 2016, he did not earn a diploma, and he was not given the opportunity to pursue his interest in a career in medicine despite the fact that he informed the DOE of this interest on several occasions." *Id*. at 16. Importantly, the IHO recognized that "M.P. is motivated to succeed in life and to attend tutoring, a TASC program, and a nursing assistant program[,]" *id*., and that S.P.'s witnesses, "Dr. Zamora and Dr. Levy testified persuasively that with the proper supports, M.P. could attain age-appropriate functioning and successfully complete the HSE exam and a nursing assistant program." *Id*. at 16-17.

The IHO concluded that "M.P. is entitled to an award of compensatory education that will put him in the position he would have been in had the DOE provided him with a FAPE in AYs 2015 and 2016." *Id*. at 18. The IHO ordered that the DOE immediately fund two years of compensatory education and transition services to M.P. in the form of: (1) 720 hours of one-on-one tutoring, (2) enrollment in a TASC preparatory program with literacy support, (3) enrollment in the Certified Nurse's Assistant Program, (4) occupational therapy two times per week, and (5) a MetroCard to travel to and from these programs. *Id*. The DOE did not appeal the order. Grant Decl. ¶ 25.

### B.      The Fees Complaint

On September 12, 2019, pursuant to the DOE's procedures, Plaintiff's attorneys submitted a fee request to the DOE. Shore Decl. ¶ 10. The request included the timesheets describing the work by Plaintiff's attorneys in connection with the Due Process Hearing, the resumes and curricula vitae of all attorneys and staff who worked on the Due Process Hearing, the Due Process complaint, the decision issued by the IHO, and the written closing brief submitted by Plaintiff's attorneys. *Id*. The timesheets charged rates for both AFC and Arnold & Porter that courts had approved previously for AFC attorneys with similar experience. *Id*.

Despite many requests from Plaintiff's attorneys to the DOE to respond to Plaintiff's fee request, the DOE did not make any settlement offer for fees for one year. *Id.* ¶ 11. In September and October 2020, after the DOE sent a first offer that was less than one-third the requested fees, the parties engaged in settlement negotiations but could not reach agreement. *Id*. On October 7, 2020, with the statute of limitations approaching, Plaintiff's attorneys filed the instant complaint. *Id*.

On December 9, 2020, AFC drafted and filed the Parties' joint case management plan in which the Parties requested a settlement conference before Magistrate Judge Netburn. *Id.* ¶ 12. A settlement conference was then scheduled for January 26, 2021. *Id*.  In response to Defendants' request, on December 11, 2020, Plaintiff's attorneys sent to Defendants' counsel updated timesheets to include the time spent on this litigation as of December 8, 2020.  Defendants have not made an offer of settlement since the filing of the complaint. *Id*. ¶ 12-13.

Pursuant to Magistrate Judge Netburn's individual rules, on January 19, 2021, AFC drafted and submitted a pre-settlement conference letter and attendance form for the January 26, 2021 settlement conference. *Id*. ¶ 13. On January 23, 2021, Defendants' counsel contacted AFC, requesting consent for the settlement conference to be adjourned. *Id*. Defendants' counsel stated

his intent to obtain authority to settle the case before the settlement conference. *Id*. With that representation, AFC agreed to the adjournment and the Court adjourned the settlement conference to March 2, 2021. *Id*. Defendants' counsel, however, never sent a settlement offer. *Id*. On February 22, 2021, needing to prepare for the settlement conference, AFC sent an email to Defendants' counsel asking whether Defendants would be sending a settlement offer prior to the settlement conference. *Id*. Defendants' counsel did not respond until the morning of March 2, 2021, immediately prior to the settlement conference, stating that he would not be able to make a settlement offer at the conference. *Id*. Defendants' counsel later informed the Court that he did not have settlement authority. *Id*. At the March 2, 2021 conference, Magistrate Judge Netburn stated – and Defendants' counsel agreed – that Defendants would be obligated to pay for S.P.'s attorneys' time to prepare for and attend the settlement conference. *Id*.

Since the settlement conference on March 2, S.P.'s attorneys have continued to try to resolve this litigation without a need for the time and expense of further Court involvement. *Id*. ¶ 15. Most recently, on March 15, 2021, AFC sent an email to Defendants' counsel asking whether Defendants would be making a settlement offer, noting that S.P.'s attorneys would need to start working in earnest on this motion. *Id*. Defendants' counsel did not respond to that email. *Id*.

### C.    S.P.'s Counsel

At the IHO stage, S.P. was represented by then-Senior Attorney Lucy McMillan[5] and former associate Lauren Fraid of Arnold & Porter Kaye Scholer LLP, and Ashley Grant of AFC. *See* Grant Decl. ¶ 7. Although other attorneys and staff members from Arnold & Porter and AFC worked on the underlying hearing, to avoid any reduction for duplication, S.P. is seeking fees for the work performed by these three attorneys in the underlying due process hearing. Shore Decl.

---

[5] Ms. McMillan's current title is Pro Bono Counsel. *See* Grant Decl. Ex. H (Arnold & Porter Firm Biography for Lucy S. McMillan).

¶¶ 26-27. S.P. is seeking fees for the work performed by AFC Director of Litigation Rebecca Shore for the instant federal lawsuit concerning legal fees for a prevailing party under the IDEA and Rehabilitation Act. *Id*. ¶ 26.

Ms. McMillan has been a member of the bar for 16 years and an attorney at Arnold & Porter for 14 years. *See* Grant Decl. ¶ 26 & Exs. H (Arnold & Porter Firm Biography for Lucy S. McMillan), I (New York State Unified Court System Attorney Detail Report for Lucy McMillan). She is a graduate of Washington University in St. Louis and received her J.D., *cum laude*, from New York University School of Law. *See* Grant Decl. Ex. H. After graduating from law school, she clerked for United States Magistrate Judge Roanne L. Mann in the Eastern District of New York. *Id*. Prior to joining Arnold & Porter in 2007, Ms. McMillan served as an Equal Justice Works Fellow at Advocates for Children for two years. *Id*. At the time of the impartial hearing, Ms. McMillan had 12 years of special education litigation experience and had handled over fifty special education matters. *See* Grant Decl. ¶ 26. Ms. McMillan has handled multiple special education impartial hearings and has represented a parent in a special education matter in federal district court, as well as a parent in a different special education matter before the Second Circuit Court of Appeals. *Id*. In addition to her special education litigation experience, Ms. McMillan has handled an array of litigation matters in federal and state court and in arbitration proceedings. *See* Grant Decl. Ex. H. Although Ms. McMillan's customary hourly rate at the time of the hearing was much higher, S.P. is seeking a discounted hourly rate of $400 for Ms. McMillan's work on this matter. *See* Shore Decl. ¶ 17.

Lauren Fraid received her B.A., *magna cum laude*, from Brandeis University and J.D., *cum laude*, from St. John's University School of Law, where she was a member of the National Team and an External Executive Director of the Moot Court Honor Society. *See* Grant Decl. Ex.

J (Arnold & Porter Archived Firm Biography for Lauren Fraid). She was a seventh year associate at Arnold & Porter when she worked on this matter. *Id*. Ms. Fraid's commercial practice focused on complex commercial litigation and arbitration in which, among other things, she supervised and managed work performed by expert witnesses. *Id*. Although Ms. Fraid's customary hourly rate at the time of the hearing was much higher, S.P. is seeking a discounted hourly rate of $350 for Ms. Fraid's work on this matter. *See* Shore Decl. ¶ 17.

Ashley Grant was the primary attorney from AFC who worked with S.P. and M.P. during the Due Process Hearing. *See* Grant Decl. ¶ 7 & Ex. K (Ashley Grant Resume). Ms. Grant directs the Postsecondary Readiness Project at AFC, a team focusing primarily on helping older youth receive the educational support they need, including access to a diploma, transition supports, and programming for overage, under-credited students, and representation of students and their parents at special education due process hearings. *Id.* ¶ 28. Ms. Grant also coordinates the state-wide Multiple Pathways to a Diploma Coalition. Prior to law school, Ashley Grant was a special education teacher in Los Angeles.  Ashley Grant holds a Bachelor of Arts in Sociology from the University of California, Los Angeles; a Master of Arts in Special Education from California State University, Dominguez Hills; and a Juris Doctor from New York University School of Law, which she received in 2012. *Id*. Ms. Grant has been admitted to practice law in New York State since 2013. *Id*.

S.P. now moves for an order granting attorneys' fees, costs and expenses in the amount of $99,171.32 as of March 24, 2021, plus additional fees incurred in this litigation after March 24. This includes attorneys' fees in the amount of $87,480 for Arnold & Porter's fees for the administrative matter, *see* Shore Decl. Ex. B (Invoices for Arnold & Porter Attorneys' Fees and Expenses), attorneys' fees in the amount of $10,631 for AFC's fees for the administrative matter

and the instant attorneys' fees matter through March 24, 2021, *see* Shore Decl. Ex. C (AFC Attorneys' Fees Invoice), and costs in the amount of $1,060.32. *See* Shore Decl. Ex. B. S.P. will also seek fees through the conclusion of this litigation and will update that amount as of the filing of the reply brief.

## III.    PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AS THE PREVAILING PARTY

Defendants do not dispute that S.P. was the prevailing party in the underlying hearing. As the prevailing party, S.P. is entitled to an award for attorneys' fees. The IDEA provides that "in any action or proceeding brought under [the IDEA], [a] court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). The Rehabilitation Act likewise provides fees for the prevailing party. *See* 29 U.S.C. § 794a(b). To obtain prevailing party status, a plaintiff must secure relief that alters the legal relationship between the parties and changes the defendant's behavior in a way that directly benefits the plaintiff. *See Farrar v. Hobby*, 506 U.S. 103 (1992). A "prevailing party" plaintiff need only succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F.Supp.2d 336, 345 (S.D.N.Y. 2010) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)).

S.P. is unquestionably the prevailing party in this case: (1) she secured a judgment on the merits in the form of a Findings of Fact and Decision by the IHO; (2) the IHO ordered all of S.P.'s requested relief; and (3) the DOE did not appeal the decision. *See* Grant Decl. Ex. A. Therefore, S.P. is entitled to reasonable attorneys' fees and costs under the IDEA and the Rehabilitation Act's fee-shifting provisions.

**IV.     THE REQUESTED FEE IS REASONABLE**

As the prevailing party in this case, S.P. is entitled to reasonable attorneys' fees and

costs. In calculating an award of statutory attorneys' fees, courts in the Second Circuit are

instructed to follow the standard set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. County of Albany*, "bear[ing] in mind all of the case specific variables" relevant to assessing

the reasonableness of attorneys' fees in setting a reasonable hourly rate. 522 F.3d 182, 190 (2d

Cir. 2008). The final determination of the fee award involves a four-step process:

(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably

expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any

appropriate adjustments to arrive at the final fee award. *Id.*

Plaintiff's attorneys in this case should receive the requested fees because their

discounted hourly rates are supported by the case law under the standard set forth above, and the

amount of time expended was reasonable given the case's scope.

**A.     Plaintiff's Attorneys' Hourly Rates Are Reasonable**

To determine whether the requested hourly rate is reasonable, the Court should look to

the market rates prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation. *See A.R. v. N.Y.C. Dep't. of Educ.*, 407 F.3d 65 (2nd

Cir. 2005); *see also C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632, 2018 U.S. Dist.

LEXIS 134646, at *10 (S.D.N.Y. Aug. 9, 2018) ("Under the fee-shifting provision of the IDEA,

the court determines a reasonable hourly rate 'based on rates prevailing in the community in

which the action or proceeding arose for the kind and quality of services furnished.'"). Here, the

community in which the action arose in New York City, and in particular the Southern District of

New York. M.P. was denied a FAPE in New York City, her counsel at Arnold & Porter and AFC

are located in Manhattan, the DOE's main offices are in Manhattan, and this lawsuit was filed in

the Southern District of New York courthouse in Manhattan. *See* Grant Decl.¶ 7 & Exs. A-B.

Accordingly, the Court should look to the prevailing rates for special education attorneys in this

District. *See Green v. City of New York* (2d Cir. 2010) (courts award rates based on district filed,

even if a litigation could have been filed in multiple districts).

In setting hourly rates for each attorney, the Court should also consider the *Johnson*

factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the

skill requisite to perform the legal service properly; (4) the preclusion of employment by the

attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount

involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10)

the 'undesirability' of the case; (11) the nature and length of the professional relationship with

the client; and (12) awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n. 3 (citing *Johnson

v. Ga Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)). While the Court should consider these factors in

assessing the reasonableness of an attorney's hourly rate, it is not required to apply each of them

rigidly to the facts of the case—only to consider them holistically in setting the attorneys' fee

award. *See Green v. City of New York*, No. 05–CV–429, 2010 WL 148128, at *10 (E.D.N.Y. Jan.

14, 2010), aff'd, 403 Fed. Appx. 626 (2d. Cir. 2010) (quoting *Lochren v. Cnty. of Suffolk*, 344

Fed. Appx. 706, 709 (2d Cir. 2009)).

Here, Plaintiff benefited from representation by highly skilled attorneys. S.P.'s attorneys

were able to secure a decision by the IHO that ordered relief on all of her requests—the "most

critical factor in determining the reasonableness of a fee award." *See M.D. v. N.Y.C. Dep't of

Educ.*, No. 17-CV-2417, 2018 U.S. Dist. LEXIS 156923, at *1-4 (S.D.N.Y. Sept. 14, 2018)

("The 'most critical factor in determining the reasonableness of a fee award' is indeed 'the degree of success obtained by plaintiffs' counsel'") (quoted citations omitted). Furthermore, the requested hourly rates are commensurate with Plaintiff's attorneys' respective experience and qualifications and within the range supported by the case law.

Arnold & Porter has nearly 1,000 attorneys in fourteen offices across the United States, Europe and Asia. *See* Shore Decl. Ex. A (Arnold & Porter Fact Sheet). It has been publicly reported that the firm has many of the world's top businesses as its clients. *See id*. The firm also has a long tradition of being a leading provider of pro bono legal services across a wide range of matters. *See id*. As a leading international law firm, Arnold & Porter employs attorneys of the highest caliber, which justifies its high standard rates. *See C.D.*, 2018 U.S. Dist. LEXIS 134646, at *11 (noting "the experience, reputation, and ability of the attorneys" and the "customary fee" as two important *Johnson* factors to consider when determining the reasonableness of attorneys' hourly rates); *see also E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243, 2012 WL 5462602 at *5 (S.D.N.Y. Nov. 8, 2012) ("'The size and caliber of the firm in question have a significant bearing on what rates are charged.. . .' For that reason, a 'movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead.'") (citing cases) (quoted citations omitted).

Plaintiff asks this Court to set a discounted $400 hourly fee for Ms. McMillan, who had been an attorney at Arnold & Porter for approximately ten years at the time of the impartial hearing, and a member of the bar for twelve years. Grant Decl. ¶ 26 & Exs. H-I. The requested rate of $400 is a significant reduction from Ms. McMillan's standard hourly rate at that time. Shore Decl. ¶ 17. Ms. McMillan's twelve years of experience in special education litigation at the time of the impartial hearing, including her representation of more than fifty special

education clients provided valuable expertise, experience, and insight in this case.  Indeed, the $400 rate is lower than the rates ordered by courts in this district for attorneys with similar experience.  *See E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243, 2014 WL 1092847, at *4 (S.D.N.Y. Mar. 17, 2014) ($475 per hour for experienced IDEA lawyer); *T.K. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3964, 2012 U.S. Dist. LEXIS 47311 (S.D.N.Y. Mar. 30, 2012) (awarding $415 to a partner who had "extensive experience in litigating IDEA cases," even though he had only "achieved some measure of relief for his clients in [the] case."). In *E.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243, 2014 WL 1092847 (S.D.N.Y. Mar. 17, 2014), the Court set a $475 fee for an attorney who had won *nearly* all of the plaintiff's requested relief. Thus, given her extensive experience and the outcome obtained—and in light of the fact that $400 an hour is a significant deduction of her standard hourly rate at that time—the Court should award Ms. McMillan her discounted hourly rate of $400. *See D.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *3 (S.D.N.Y. Apr. 22, 2019) ("Courts in this District generally have awarded between $300 and $475 per hour to senior or experienced attorneys in IDEA cases, landing on the higher end of the range based on greater experience and complexity of the matter.") (collecting cases).

Ms. Fraid, a seventh year associate at Arnold & Porter at the time of the hearing, also made significant contributions to S.P.'s case. Grant Decl. ¶ 27. Prior to the hearing, Ms. Fraid had extensive experience in preparing expert witnesses and, among other things, she prepared the expert witness in this matter.  *See* Grant Decl. ¶ 27 & Ex. I (Arnold & Porter Archived Firm Bio of Lauren Fraid).   The IHO expressly noted the weight and persuasiveness of the expert's testimony in his decision. Grant Decl. Ex. A at 16-17.  S.P. is requesting a significantly reduced hourly rate of $350 for Ms. Fraid. Shore Decl. ¶ 17. The requested rate is justified given her

general experience in commercial litigation, experience in preparing expert witnesses, and her

educational and professional background. *See D.B.*, 2019 WL 6831506, at *3 (finding that $300

per hour is an appropriate rate for a fourth-year associate for her work on the federal matter as

her "skills as a litigator were directly transferable to her work on this matter . . . ."); *P.R. v.

N.Y.C. Dep't of Educ.*, No. 17-CV-4887(LTS)(KNF), 2018 WL 4328012, at *6 (S.D.N.Y. July

19, 2018) (finding a $300 hourly rate to be reasonable for an associate with two years'

experience).

AFC's Ashley Grant, who has extensive experience in special education administrative

hearings, contributed significantly to S.P.'s representation, spending 27.0 hours reviewing

hearing materials, the Department of Education's motion to dismiss and the post-hearing

briefing. *See* Shore Decl. Ex. C; Grant Decl. ¶ 29. Ms. Grant provided insight and oversight

throughout the hearing process, participated in strategy conversations, provided her knowledge

of the due process hearing process and education law, reviewed drafts of all hearing documents

to ensure that they were consistent with the IDEA, Section 504 of the Rehabilitation Act, and the

practice of special education due process hearings in New York City, and reviewed the post-

hearing briefs. Grant Decl. ¶ 29. At the time of the hearing, Ashley Grant had four years'

experience working in this area of special education law.  Shore Decl. ¶ 19.  S.P. is requesting an

hourly rate of $270 for Ms. Grant's time, which is modest compared to rates charged by other

experienced IDEA attorneys in the community.  *D.B.*, 2019 WL 6831506, at *3 (finding $300

appropriate rate for a fourth year associate in an IDEA case).

AFC's Director of Litigation, Rebecca Shore, is representing S.P. in connection with the

instant federal court action with respect to attorneys' fees and expenses. *Id.* ¶ 20. Ms. Shore has

more than 20 years' experience, and has worked on special education and disability

discrimination litigation throughout her career at a firm and at non-profit organizations. *Id.* Ms. Shore oversees all of AFC's impact litigation, including class actions, individual and group lawsuits, IDEA appeals, and state and federal administrative complaints, and supervises staff attorneys in connection with their representation of parents in their special education due process hearings. *Id.* ¶ 21. She has served, and continues to serve, as counsel in, among others, *J.L. v. New York City Dep't of Educ.,* 17-cv-7150 (S.D.N.Y.); *L.V. v. New York City Dep't of Educ.*, 03-cv-9917 (S.D.N.Y.)*; D.S. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510 (S.D.N.Y. 2010); *E.B. v. New York City Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008); *C.D.*, 2009 U.S. Dist. LEXIS 10167. *Id.* ¶ 21. She also has represented parents in federal court in IDEA appeals and enforcement proceedings, *see, e.g., I.C. v. New York City Dep't of Educ.*, 20-cv-05264 (ALC) (S.D.N.Y.); *S.B. v. N.Y.C. Dep't of Educ.,* 117 F. Supp.3d 355 (S.D.N.Y. 2015); *Z.V. v. N.Y.C. Dep't of Educ.*, 222 F.Supp.3d 326 (S.D.N.Y. 2016), and complaints for attorneys' fees, *see, e.g., M.R. v. N.Y.C. Dep't of Educ.*, 20-cv-00744 (S.D.N.Y.); *D.B. v. New York City Dep't of Education,* 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *V.L. v. N.Y.C. Dep't of Educ.,* 19-cv-08599 (S.D.N.Y.); *S.K. ex rel. E.N. v. N.Y.C. Dep't of Educ., et al.*, 17-cv-09906 (ER) (S.D.N.Y.). *Id.* Ms. Shore has presented locally and nationally on education law and civil rights litigation many times, including a continuing legal education course on attorneys' fees under the IDEA before the New York State Bar Association. *Id.* ¶ 22. S.P. is requesting an hourly rate of $420 for Ms. Shore's time on the federal court action. *Id.* ¶ 23. This amount is consistent with the rates courts have awarded for attorneys with more than 20 years' experience. *D.B.*, 2019 WL 6831506, at *3; *G.B.*, 894 F. Supp.2d at 432.

Sworn declarations from experienced IDEA litigators Bonnie Spiro Schinagle with 7 years of special education litigation experience, Michelle L. Siegel with 12 years of special

education experience, and Jesse Cole Cutler with 18 years of special education litigation experience, filed herewith, confirm that the proposed hourly rates outlined above are reasonable in light of "rates prevailing in the community" (New York City) for IDEA litigation. Ms. Schinagle, Ms. Seigel  and Mr. Cutler charge $450, $500 and $650 per hour, respectively, to paying clients. *See* Declaration of Bonnie Spiro Schinagle ¶ 7; Declaration of Michelle Spiegel ¶ 9; Declaration of Jesse Cole Cutler ¶ 6.

### B.     The Hours Plaintiff's Attorneys Spent Are Reasonable

The hours expended on this case are reasonable and should not be reduced further beyond the reductions already made by S.P.'s counsel, as indicated below. The court typically reduces attorneys' fees if the time expended and legal services provided were excessive or redundant considering the nature of the case. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). But here, Plaintiff's attorneys staffed the case efficiently. *See* Grant Decl. ¶ 8. Ms. McMillan and Ms. Fraid conducted the hearing on July 19, 2017, which included arguments on the DOE's motion to dismiss and arguments relating to evidence and the order of witnesses, as well as the testimony of S.P. and the expert witness who Ms. Fraid prepared and who was called to testify about M.P.'s brain tumor and learning deficits. Grant Decl. ¶ 23 & Ex. A. Ms. McMillan conducted the second day of hearing on August 10, 2017 on her own, which included the testimony of the three other witnesses called by Plaintiff, including M.P. *Id*. Moreover, despite the complexity of the case, due to Ms. McMillan's prior experience with special education cases, Ms. Grant only expended 27.9 hours on the case from the intake through to the end of post-hearing briefing and implementation of the hearing officer's order. Shore Decl. Ex. C. AFC and Arnold & Porter took steps to avoid duplication in the work on the hearing. Grant Decl. ¶ 29.

The Court need not reduce the compensable hours in this case further because S.P.'s attorneys have already carefully reviewed the invoice and have eliminated time entries for three Arnold & Porter legal assistants (11 hours, 1 hour and 11.5 hours respectively) and one Arnold & Porter summer associate (23.9 hours) who assisted Ms. McMillan and Ms. Fraid in preparing for the hearing and the post-hearing submission. Shore Decl. ¶ 26. Likewise, AFC has removed the time expended by three attorneys, a legal assistant, and two interns. *Id.* ¶ 25. Consistent with the limitations in the fee-shifting provisions of the IDEA, 20 U.S.C. § 1415(i)(3)(D)(iii), all time spent preparing for and attending the resolution meeting with the DOE in May 2017 has also been eliminated from Plaintiff's fee request. *Id*. ¶ 26.

Moreover, the fees in this case arose from the DOE's refusal to settle the administrative action, despite multiple settlement attempts on the part of S.P.'s attorneys, *see* Grant Decl. ¶ 13-16, and despite the underlying facts leading the IHO to conclude that "the DOE essentially did not provide any education to M.P. in AYs 2015 and 2016[,] [t]here has been no improvement in M.P.'s reading level since eighth grade, he made virtually no academic progress in AYs 2015 and 2016, he did not earn a diploma, and he was not given the opportunity to pursue his interest in a career in medicine despite the fact that he informed the DOE of this interest on several occasions." *See* Grant Decl. Ex A at 16.

The fees are further justified by the complexity of this case, which the DOE has acknowledged. During a pre-hearing conference with the IHO on June 13, 2017, the DOE representative stated that: "this is a necessary complex case which, you know -- a very complex procedural history." Grant Decl. Ex. D at 4. On July 14, 2017, in response to S.P.'s attorney's request to schedule a second day of hearing, the DOE attorney stated that she joined in the

request because "[t]his is a highly complex case including many school years pled in the [Due Process Complaint]." Grant Decl. Ex. E.

The DOE further increased the amount of attorney time on this matter—and thereby the amount of attorneys' fees—by informing the IHO and S.P.'s attorneys at the last minute that the DOE planned to submit a motion to dismiss with respect to the 2012-2013 through 2014-2015 school years causing S.P.'s attorneys to review and prepare argument in response to the DOE's motion to dismiss. *Id*. And, just days before the hearing, on July 17 and July 18, the DOE informed S.P.'s attorneys that, because the DOE's witnesses were on vacation, the DOE wanted to reserve the right to call the witnesses on the second day of the hearing, after S.P. had presented her case, causing S.P.'s attorneys to research and prepare for arguments regarding the burden of production and the order of witnesses. *Id*.

In other words, despite S.P.'s attorneys' multiple attempts to settle the case, the DOE chose to litigate a meritless case, filed a last minute motion to dismiss and failed to provide any clear position on when it planned to call witnesses, if at all, prior to the hearing. *Id*. Due to the DOE's failure to focus on a litigation position or strategy until the days before the hearing, S.P.'s attorneys were required to evaluate multiple potential remedies suggested by the DOE during the initial resolution session, engage in multiple pre-hearing conferences, prepare five witnesses for a hearing, prepare for potential cross-examination of DOE witnesses, review and prepare a response to a motion to dismiss, review and respond to arguments about the burden of production and the order of witnesses and file a post-hearing brief. Grant Decl. ¶¶ 13-24.

Similarly, the DOE's approach in this litigation has forced S.P.'s attorneys to expend more time and resources. AFC repeatedly contacted Defendants' counsel in an attempt to resolve this litigation without further Court intervention, without any response from Defendants'

counsel. Shore Decl. ¶¶ 10-15. Indeed, even when Defendants agreed to the settlement conference, Defendants' counsel attended the conference without any authority to make a settlement offer, let alone resolve the litigation. *Id*. ¶ 13. As a result, AFC has had to draft and file the complaint, case management plan, pre-settlement conference letter and these motion papers, as well as prepare for and attend the settlement conference. *Id*. ¶ 11-13. In addition, S.P. took time away from her job to attend the settlement conference. *Id*. ¶ 13.

Finally, there was no redundancy or duplication of efforts in having lawyers from AFC and Arnold & Porter working together on this matter. Given the complexity of the hearing, the number of school years at issue, and the motions asserted by the DOE, the utilization of three attorneys on the hearing was necessary and reasonable. Courts award fees for time billed by multiple attorneys to represent a client and attend internal strategy meetings in connection with IDEA hearings. *See e.g., A.D. v. New York City Dep't of Educ.*, 2019 WL 1292432 (S.D.N.Y. Mar. 21, 2019). In fact, pairing AFC, an education advocacy group, with a large private firm such as Arnold & Porter was an efficient way to leverage AFC's limited resources in furthering the statutory purpose of the IDEA. *See* Shore Decl. ¶ 5. AFC and Arnold & Porter also shared responsibilities, rather than duplicating work on the hearing. *See* Grant Decl. ¶ 29. Moreover, to avoid any reductions with regard to duplication, S.P. is seeking the fees for the work of only these three attorneys for the underlying hearing, rather than the fees for the other attorneys and staff who also worked on the hearing.  Shore Decl. ¶¶ 25-26. For the fees litigation, S.P. is seeking fees only for the time spent by Rebecca Shore. *Id*. ¶ 25.

All evidence supports a finding that Plaintiff's attorneys' hourly rates and the time expended on this case are reasonable. Therefore, S.P. requests that the Court order the DOE to pay the fees sought.

**V.      THE REQUESTED COSTS AND EXPENSES ARE REASONABLE**

S.P. is entitled to an award of all reasonable fees and costs associated with this matter under 20 U.S.C. § 1415(i)(3)(B) and Rule 54(d)(2) of the Federal Rules of Civil Procedure. The Supreme Court has held that the term "costs" as used in 20 U.S.C. § 1415(i)(3)(B) refers to the list provided under 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court. *See G.B. ex rel. N.B. v. Tuxedo*, 894 F.Supp.2d 415, 443 (S.D.N.Y. 2012); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006).

The costs associated with this matter amount to $1,060.32. This includes, $23.70 for duplication costs and $1,036.62 for research costs. An itemized invoice of costs and expenses is filed with this motion. *See* Exs. B-C to Shore Decl. S.P. is not seeking the costs for $1,086.14 worth of research expenses accrued by an Arnold & Porter legal assistant and an Arnold & Porter summer associate for research relating to the DOE's motion to dismiss and S.P.'s post-hearing brief. *See* Shore Decl. ¶ 29 & Ex. B. As the invoice shows, all costs and expenses in this matter are reasonable and thus reimbursable. *See M.D. v. N.Y.C. Dep't of Educ.*, 2018 U.S. Dist. LEXIS 156923, at *18. AFC is not seeking any of its costs associated with the hearing.

## VI.    CONCLUSION

Based on the foregoing, S.P. respectfully requests that the Court grant attorneys' fees and related costs in the amount of $99,171.32 through March 24, 2021, and the additional fees incurred from March 25, 2021 that will be submitted with the reply.

Dated:      New York, New York
            March 25, 2021

                                            Respectfully,

                                            *Rebecca Shore*
                                            Rebecca Shore
                                            Advocates for Children of New York
                                            151 West 30th Street, 5th Floor
                                            New York, NY 10001
                                            (212) 822-9574
                                            rshore@advocatesforchildren.org

                                            *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2021, I caused to be served a true and correct copy of Plaintiff's Notice of Motion for Attorneys' Fees and Expenses, Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees and Expenses, and the declarations and exhibits filed therewith to Dismiss the Complaint via ECF on counsel of record for Defendants.

Dated:  New York, New York
        March 25, 2021

*Rebecca Shore*
Rebecca Shore